## GRIEVANCE COMMITTEE OF THE FAIRFIELD COUNTY BAR *v.* LEO NEVAS

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued March 3—decided April 28, 1953

*Lorin W. Willis,* for the appellant (plaintiff).

*David Goldstein,* with whom, on the brief, was *Bernard S. Peck,* for the appellee (defendant).

JENNINGS, J. The grievance committee of the Fairfield County bar filed a presentment charging the defendant with unprofessional conduct. The case

was tried in the Superior Court. Judgment was rendered dismissing the presentment. The plaintiff appealed on the principal ground that the finding as sought to be corrected did not support the conclusions reached.

The statement of the case presents a problem. The finding of facts contains 198 paragraphs and even more might be required if a really full statement were made. Plaintiff's exhibits ran through the alphabet and to DD. There were seventeen defendant's exhibits. The bare essentials will take quite a space. The defendant represented the complainant, Elizabeth Pylypchuk, also known as Betty Phillips, in several independent matters, as stated in the finding. All were relevant in the investigation conducted by the trial court, but with one exception they are of no importance here, since in the final analysis no misconduct with respect to them is charged. The value of the defendant's services to the complainant was recognized, and there was no claim that the substantial fees paid to him were excessive. The complainant, as the plaintiff acknowledged, was not a credible witness. The facts found show that this is an understatement. Since she was the only witness of any importance for the plaintiff, its difficulties in attacking the finding and conclusions are manifest. These factors make some condensation possible.

Examination of the claims of law and the brief of the defendant shows that the important issue was his conduct with reference to stock held by him in a corporation which he formed for the complainant. If the plaintiff cannot prevail on this issue, it cannot successfully attack the judgment.

The following findings of fact are supported by the evidence: The defendant has been an attorney at

law in this state for more than ten years. He has an office in Westport. He has occupied various positions of importance and enjoys an excellent reputation. The complainant is a worldly woman, familiar with business transactions and particularly with transactions relating to inns and restaurants. In March, 1948, the complainant consulted the defendant with reference to the purchase of Cobbs Mill Inn, on which she had an option for $133,458. The defendant secured a reduction of over $20,000 in the price and obtained better terms on the financing plan. The terms under the defendant's arrangement included the payment of $5000 on execution of the contract and $15,000 at the closing and the securing of a liquor permit. The conveyance was to run to a corporation to be formed by the complainant. She represented that she would have the funds available with which to consummate the transaction. She did not succeed in raising even the first $5000, and it was advanced by the defendant. She then requested the defendant to assist her in obtaining the $15,000 for the closing and stated that she would give 40 per cent of the issued stock to any persons advancing that sum. To save the contract for his client and his own $5000, the defendant advanced the additional sum of $16,482.34, including the fee for a liquor license and sundry expenses, from his own funds. This was not intended as an investment. The defendant expected to find other parties who would invest in the business and permit him to get his money out. He also intended to transfer to such parties the 40 per cent of stock hereinafter described.

The corporation contemplated in the agreement of sale was formed by the defendant under the name of Cobbs Mill Inn, Inc. Capital stock amounting to $2000 was issued, represented by 100 shares of non-

voting stock and 100 shares of voting stock. Thirty shares of the nonvoting and forty-nine shares of the voting stock were issued to Morris Robinson, an office associate of the defendant; seventy shares of the nonvoting and fifty shares of the voting stock were issued to the complainant. One share of voting stock was issued to Elizabeth Gordon, a stenographer in the defendant's office. All certificates, as was indicated by an indorsement thereon referring to an agreement of May 3, 1948, were subject to other stockholders' rights to purchase. Neither Robinson nor Elizabeth Gordon paid anything for their stock. Both indorsed the certificates in blank and delivered them to the defendant. On April 8, 1948, the complainant drew and signed a paper which contained the following statements: "In connection with purchase [of Cobbs Mill Inn], Attorney Leo Nevas has provided sufficient funds to make the purchase possible, and he will receive 40% of the net profits after such purchase price money has been paid off. . . . Elizabeth Pylypchuk retains 60% of the 100 shares." Nothing that was done by the defendant thereafter changed the status of the stock ownership from that known to the complainant as appears in the quoted exhibit and no deception or misrepresentation was practiced by the defendant. It made no difference to the complainant whether the stock was actually owned by the defendant or by somebody else.

The defendant had had a commitment from his brother-in-law and the latter's partner, residents of Hartford, that they would advance $10,000 to complete the purchase, and he informed Robinson that he, Robinson, was holding the certificates as trustee for some person in Hartford. The commitment was never honored because of complications resulting from the complainant's conduct. Robinson and Eliza-

beth Gordon were nominal stockholders and officers in the preliminary organization of the corporation, after which they were to assign the stock to the ultimate owner. The latter might be the defendant or anyone who succeeded him as lender of the money with which the business was acquired. At the date of the agreement of May 3, the defendant was the only person who had made loans to the complainant or Cobbs Mill Inn, Inc., and the only person represented by Robinson. The 60 per cent stock interest in the name of the complainant was, with her consent, held by the defendant as security for her indebtedness to him.

In August, 1948, Attorney Leonard Schine went to live at Cobbs Mill Inn and the complainant started to consult with him about affairs at the inn and her dealings with the defendant. From then until the first of the year inquiries as to the purchase of the inn were made by persons of substantial means. One of these provided for a payment to the complainant of $125,000 over all existing mortgages. She wanted control of all the stock so that she could take advantage of such a deal. To this end she secured two options for its purchase from the defendant. The first was dated August 31, 1948, called for payment of $10,000 to the defendant or to the people represented by him and was prepared by her. The second was dated December 21, 1948, and called for a payment of $5000. None of these negotiations came to fruition. While they were going on, in September, 1948, there was a conference between the defendant, the complainant and her new attorney, Mr. Schine. The entire history of the transaction was reviewed and Schine was advised that the defendant had advanced all of the original funds. There were five mortgages on the premises. The inn was put into

bankruptcy in January, 1950. It was sold under foreclosure by the first mortgagee for enough to satisfy the first three mortgages and to pay about $2400 on the fourth. To get the fourth mortgage, however, the defendant had had to give his personal written guarantee. From the proceeds of the mortgage he was paid the balance owing on his advances and on his fee for services in the Cobbs Mill Inn matter, but his guarantee eventually cost him approximately $14,200, or nearly twice the amount of his fee.

On these facts the court concluded that the defendant was not guilty of unprofessional conduct, and, specifically, that he had concealed no material fact from the complainant. On the contrary, it concluded, the complainant was fully aware of the situation at all times, she was willing to part with 40 per cent of the issued capital stock to anyone who would advance the funds to complete the transaction, and by concealment and misrepresentation she caused substantial loss to the defendant.

Some of the facts found (of which only a small portion have been recited) were based on conflicting testimony. It was the province of the trial court to resolve these disputes and to determine the facts. It did so and, in general, supported the position of the defendant. The evidence shows nothing so unreasonable in this conclusion as to justify our interference. *McKnight* v. *Gizze*, 107 Conn. 229, 232, 140 A. 116. The trial of a presentment by a grievance committee is in effect an investigation by the court into the conduct of one of its officers. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 15, 22 A. 441. As late as 1907 it was questioned whether such a proceeding is subject to review. *In re Durant*, 80 Conn. 140, 149, 67 A. 497. It is now settled that a review

may be had, either by the defendant (ibid.) or by the state. *Grievance Committee* v. *Broder,* 112 Conn. 263, 267, 152 A. 292. All of our cases agree that the trial court has a wide discretion in the premises. Id., 266; *State* v. *Peck,* 88 Conn. 447, 460, 91 A. 274; *Grievance Committee* v. *Ennis,* 84 Conn. 594, 602, 80 A. 767; *In re Durant, supra.* As is stated in *Fairfield County Bar* v. *Taylor,* supra, 13, "A revising tribunal . . . would feel the delicacy of interposing its authority, and do so only in a plain case." In *Hayward* v. *Plant,* 98 Conn. 374, 382, 119 A. 341, the general rule is stated to be: "Judicial discretion is always a legal discretion. Its abuse will not be interfered with on appeal to this court except in a case of manifest abuse and where injustice appears to have been done."

The facts detailed above show that the grievance committee was only performing its unpleasant duty in investigating the complaint made to it. It did not demand the defendant's disbarment. As the trial court stated in its memorandum, "I feel that Mr. Nevas, the respondent, deserves criticism for becoming involved personally and financially in his client's business. There was a complete absence of prudence and good taste. His involvement apparently became inextricable after he had put in the first $5,000. From then on everything he did sought to save the money he had improvidently already paid in. He should not have done that." By loaning money to his client, the defendant put himself in a position where his personal interests might well become adverse to hers. The making of such a loan by a lawyer is not, however, necessarily unethical conduct. It is unethical only if the loan is made to accomplish some purpose contrary to the client's welfare or if, in seeking repayment, the lawyer

pursues practices which are unfair or unduly oppressive. *In re Sizer,* 306 Mo. 356, 375, 267 S.W. 922. It is apparent that the status of the purely speculative 40 per cent bonus stock interest, about which the contest centered, was to await the event. Unfortunately the event was bankruptcy, for which the defendant was in no way to blame. As a matter of fact he went further than was wise or prudent in trying to avert this outcome. The options for the defendant's stock offered by the complainant were voluntarily offered as a token of appreciation for the extraordinary services rendered by him which had made possible the unusually large prospective profit to her. It was stated in argument and not denied that the stock was eventually surrendered without charge. As noted above, the trial court has a wide discretion in dealing with such matters. When the situation is as complicated as was the case here, the exercise of that discretion will be interfered with by this court only when the case is plain. While, in our opinion, the trial court might well have decided that a public reprimand should be administered to the defendant, we cannot hold as a matter of law that the court abused its discretion in refusing to discipline the defendant further than is implied in the foregoing criticism of his conduct.

There is no error.

In this opinion the other judges concurred.