STATE OF CONNECTICUT *v.* ALBERT J. LAVORGNA

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1030

Argued December 15, 1980 – decided September 4, 1981

*Richard R. Brown,* for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

SHEA, J. The defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a and of disorderly conduct in violation of General Statutes § 53a-182 after a jury trial. In this appeal from the judgment the defendant claims error (1) in the admission of certain statements made by him to the police soon after the arrest; (2) in the trial court's failure in its charge to the jury to restrict the broad language of the disorderly conduct statute in such a way as to preclude a conviction for constitutionally protected speech; (3) in the failure to acquit the defendant of the disorderly conduct charge for lack of evidence; and (4) in the denial of the defendant's motion made before trial for accelerated rehabilitation pursuant to General Statutes § 54-76p.[1]

I

The defendant claims that the interrogation of him at the police station violated his constitutional right against self-incrimination as delineated in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). No such claim was made at the trial and the evidence now challenged came into the trial without objection. Ordinarily we

---

[1] This provision is now codified as General Statutes § 54-56e.

do not consider claims which have not been raised at trial or did not arise subsequent to the trial. Practice Book §§ 288, 3063. The defendant, nevertheless, contends that his claim of error qualifies for appellate review under the exception affording such review in instances "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). It appears that some new vitality may have been breathed into our contemporaneous objection rule by a more recent holding that failure to comply with such a rule, even where the issue is one of constitutional nature, such as the admissibility of an incriminating statement in claimed violation of *Miranda,* precludes federal habeas corpus intervention "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright* v. *Sykes,* 433 U.S. 72, 84, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). It is not clear what content may eventually be poured into this cause-and-prejudice standard for federal habeas corpus review or what effect it may have upon our own standard for review upon direct appeal of claims not raised below. We shall adhere to the principles of *Evans* pending clarification.

The defendant was stopped by a Colchester police officer about midnight on December 19, 1979, while he was operating a pickup truck on route 16 from Colchester to East Hampton. The officer testified that she stopped the defendant because of the erratic manner in which he was driving. Two East Hampton officers, who had been called to assist, soon arrived. An altercation arose in the course of removing the defendant from his vehicle. The defendant struggled and he was handcuffed and taken to the East Hampton police station.

At the police station the handcuffs were removed and the defendant was given the standard *Miranda* warning of his constitutional rights. He signed a printed form furnished by the police acknowledging that he had been so advised. In the absence of the jury, the parties agreed that testimony concerning the defendant's refusal to consent to tests to determine the amount of alcohol in his system would not be presented. He did, however, submit to certain performance tests, such as walking a straight line, picking up coins from the floor and standing on one leg. The officer relied on those tests, as well as on the slurred speech and the strong alcoholic odor of the defendant, in forming his opinion that the defendant had been driving under the influence of alcohol. He also relied on the answers of the defendant while he was questioned which indicated that he had last eaten at 4 p.m. when he had pizza and beer and that he also had two bottles of beer at a restaurant where he had been drinking from 5 p.m. until 12:30 a.m. The defendant had answered a series of questions concerning his health in such a way as to negate any physical problem which might explain his inability to perform the tests adequately.

At the trial the defendant testified that after work he and some fellow employees went to a restaurant for pizza and beer. Afterward they visited the home of a friend in Salem, but the defendant maintained he had nothing further to drink, a contention which was contradicted by a witness called to testify in his behalf.

We are not persuaded that the record before us shows either a deprivation of a constitutional right or prejudice to the defendant from the admission of his statements. *State* v. *Evans,* supra. The defendant now argues that his intoxicated condition as described by the police officer indicated that he could not have understood the *Miranda* warning given to him and he

also points to the absence of any express testimony concerning his understanding of his rights. "[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda* v. *Arizona,* supra, 475. The waiver need not be explicit, however, but may be inferred from the words and conduct of the person interrogated as well as from his educational background and from other circumstances relating to mental capacity. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). Here there was evidence that the defendant worked as a foreman for a construction company, a position of some responsibility, and that his answers to the numerous questions asked were coherent, protective of his interest, generally consistent with his testimony at trial, and not merely monosyllabic. The fact that he was charged with and has been found guilty of operating while under the influence of liquor does not in itself demonstrate such a lack of understanding as to preclude the requisite mental capacity for making a voluntary and knowledgeable waiver. *Bufford* v. *State,* 382 So. 2d 1162, 1165 (Ala. App. 1980); *State* v. *Spencer,* 46 N.C. App. 507, 509, 265 S.E.2d 451 (1980); *Lowe* v. *State,* 584 S.W.2d 239, 241 (Tenn. App. 1979). There is a substantial difference in the degree of intoxication required for the offense of operating a motor vehicle under the influence and that necessary to render a person mentally incapable of understanding what he is doing.

It is also obvious that the posture of the defendant on appeal in claiming that he was too intoxicated to waive his constitutional rights effectively is wholly inconsistent with his position at the trial that he was not under the influence of alcohol. As a matter of trial strategy he may well have decided to forgo a hearing

upon the admissibility of his statements because they generally coincided with the evidence he presented in his own behalf. He could hardly have testified at a suppression hearing in the absence of the jury that he was so intoxicated that he did not comprehend what he was doing without jeopardizing the defense he chose to make. Even if the statements had been excluded, the testimony of the defendant at the suppression hearing would have been available for impeachment of his later testimony at the trial. *Harris* v. *New York,* 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971); *State* v. *Bember,* Appellate Session of the Superior Court, Docket No. 577, May 16, 1980.

We conclude, therefore, that the record does not adequately support the defendant's claim that the evidence of his responses to the questions of the police officer violated the principles of *Miranda.* It is also our view that such testimony could not have prejudiced the defendant because it was not essentially different from his testimony at the trial.

## II

The defendant claims also that the evidence was insufficient to support his conviction of disorderly conduct in violation of General Statutes § 53a-182.[2] The facts which the jury might reasonably have found in relation to the charge of disorderly conduct may be summarized briefly. After stopping his truck in response to the siren and flashing signal lights of the

[2] General Statutes § 53a-182 provides: "DISORDERLY CONDUCT: CLASS C MISDEMEANOR. (a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting or persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse.

"(b) Disorderly conduct is a class C misdemeanor."

police cruiser which had followed him for a distance of more than three miles, the defendant got out of his truck. Officer Mawni, who had been driving the cruiser, approached him and requested that he remain inside the truck. The defendant made an offensive remark,[3] but he did get back into the truck. When the officer requested his license and registration, the defendant replied that he had none. Two East Hampton policemen who had been called to assist soon arrived. One of them, officer Vezina, approached the defendant, who was sitting in his truck and asked for his license and registration. The defendant refused to show them and, turning to officer Mawni who was standing next to the truck, he said that she was a "no good female cop" and that he did not have to take anything from her or listen to her. He also refused to get out of the truck. Officer Vezina then proceeded to open the door of the truck. As he did so, the defendant pushed the door, causing it to strike Vezina in the chest. With the assistance of another East Hampton policeman, Vezina grabbed the defendant and dragged him out of the truck. The defendant continued to struggle and had to be forcibly handcuffed. He continued to shout at officer Mawni.

This recital would adequately support a finding that the defendant, "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof" had engaged "in fighting or in violent, tumultuous or threatening behavior" in violation of subsection (1) of § 53a-182 (a). It would also justify a finding that he had with like intent annoyed or interfered with another person by offensive or disorderly conduct in violation of subsection (2) of the statute. The defendant's act of pushing the door into the officer[4] and his physical resistance to being removed

---

[3] The defendant said, "You shitting Colchester Constables."

[4] The defendant claims that officer Vezina on cross-examination admitted that the door might have struck him accidentally, but we do not so construe the testimony. The testimony referred to was as follows:

from the truck and being handcuffed can fairly be characterized as "violent," "tumultuous," "offensive or disorderly." The fact that a charge of interfering with an officer in the performance of his duties in violation of General Statutes § 53a-167a[5] may have been more appropriate does not preclude a conviction for disorderly conduct, a less serious offense.[6]

### III

The error claimed in the overbreadth of the charge upon disorderly conduct was not made the subject of any exceptions to the charge or otherwise raised in the trial court. Again the defendant claims the special circumstances of a deprivation of a fundamental constitutional right. *State* v. *Evans,* supra, 70. We have previously allowed review of a similar claim involving the disorderly conduct statute in essentially the same situation. *State* v. *Anonymous (1978-4),* 34 Conn. Sup. 689, 692–93, 389 A.2d 1270 (1978).

Although, as we have already concluded, the evidence would have supported a finding that the defendant had engaged "in fighting or in violent, tumultuous or threatening behavior" in violation of subsection (1) of § 53a-182, the trial court charged the jury only upon subsection (2) which prohibits intentional annoyance or interference with another person

---

"Q. Did it appear that the opening of the door by Mr. Lavorgna was an attempt by him to leave the vehicle?

"A. Well, my personal opinion at that point, was that it was an attempt to maybe leave the vehicle, but letting me know that he wasn't doing it, you know, to be nice about it."

[5] General Statutes § 53a-167a provides as follows: "INTERFERING WITH AN OFFICER: CLASS A MISDMEANOR. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties.

"(b) Interfering with an officer is a class A misdemeanor."

[6] Disorderly conduct in violation of General Statutes § 53a-182 is a class C misdemeanor. Interfering with an officer in violation of General Statutes § 53a-167a is a class A misdemeanor.

"by offensive or disorderly conduct."[7]   In *State* v. *Anonymous (1978–4)*, supra, 694, we held that, where language consisting of epithets directed at a victim was the sole evidentiary basis for an accusation of disorderly conduct, the broad language of the statute must be limited in the charge "to prohibit only those expressions having a substantial tendency to provoke violent retaliation or other wrongful conduct." Where utterances are involved, this judicial limitation upon the scope of the statute is necessary in order to avoid the infringement upon constitutionally protected speech which application of its general terms might otherwise entail.   When words are claimed to offend the statute only those "having a direct tendency to cause acts of violence by the persons" to whom they are addressed may be relied upon. *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 1031 (1942). "[F]ighting words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace" – are not protected by the first amendment.   Id., 572; *Cantwell* v. *Connecticut*, 310 U.S. 296, 309, 60 S. Ct. 900, 84 L. Ed. 1213 (1940).   In *State* v. *Anonymous (1978–4)* supra, we concluded that the charge was deficient in that it failed to restrict the broad language of subsection (2) of § 53a-182 (a) so as to preclude a conviction for constitutionally protected speech. "At least where speech in a public place is involved, an instruction that a conviction may be had for conduct which is 'so grossly offensive . . . as to amount to a nuisance' or which 'outrages the sense of public decency' or which causes 'inconvenience, annoyance, or alarm' exceeds the narrow scope of permissible restrictions on freedom of speech." Id., 694; *Plummer* v. *City of Columbus*, 414 U.S. 2, 2–3, 94 S. Ct. 17, 38 L. Ed. 2d 3 (1973); *Gooding* v. *Wilson*, 405 U.S. 518, 520–21, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1971).

---

[7] The only charging document used at the trial was the complaint, which stated "disorderly conduct" to be the offense and referred to the statute as § 53a-182 without specifying any subsection.  No information was filed.

The instructions[8] given by the trial court upon disorderly conduct are quite similar to those we found inadequate in *State* v. *Anonymous (1978–4)*, supra. No limitation was placed upon the broad terms of the statute in order to avoid the possibility of a conviction resting upon utterances not constituting "fighting words." Unlike the situation in *State* v. *Anonymous (1978–4)*, where the only evidence supporting the disorderly conduct conviction consisted of words spoken to the victim, there was in this case evidence

---

[8] The charge upon disorderly conduct was as follows:

"Going on to the second charge, disorderly conduct. The information charges the Defendant with disorderly conduct in violation of section 53-182 [sic]. The applicable section there is that dealing with offensive or disorderly conduct, and this section provides: a person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he by offensive or disorderly conduct annoys or interferes with another person. It must be proven by the State beyond a reasonable doubt that the Defendant intended to cause inconvenience, annoyance or alarm, or recklessly created a risk, thereof, by engaging in a forbidden conduct.

"A person acts intentionally with respect to a result or to conduct, when his objective is to cause such result, or to engage in such conduct. A person acts recklessly with respect to a result or to a circumstance, when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur, or that such circumstances exist.

"The risk must be of such a nature that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in a situation. By offensive conduct is meant conduct which under contemporary community standards is so grossly offensive to a person who actually overhears it, or sees it, as to amount to a nuisance. By disorderly conduct is meant such conduct as outrages the sense of public decency, such conduct must annoy or interfere with another person.

"Webster defines annoy as meaning to irritate, vex, bother, as by repeated action. Annoy is to interfere, as defined by Webster, as meaning to come in or between some person to intervene or to meddle.

"The test is what people of common intelligence would understand would be annoyance or interference with another person which causes, or had a tendency to cause, inconvenience, annoyance or alarm, or recklessly create a risk to such another person. You have a duty to determine whether there is proof beyond a reasonable doubt that the Defendant violated this section.

"The court notes that the Defendant was actually tried and convicted under General Statutes § 53a-182, rather than the statute cited in the charge."

of acts and conduct not protected by the first amendment which was sufficient of itself to support the conviction. This distinction is of no benefit to the state, however, because a general verdict of guilty cannot stand if it is possible that under the instructions given the jury may have relied upon a constitutionally impermissible ground. *Bachellar* v. *Maryland,* 397 U.S. 564, 570, 97 S. Ct. 1312, 25 L. Ed. 2d 570 (1970); *Street* v. *New York,* 394 U.S. 576, 592, 89 S. Ct. 1354, 22 L. Ed. 2d 572 (1969); *Stromberg* v. *California,* 283 U.S. 359, 368, 51 S. Ct. 532, 75 L. Ed. 1117 (1931). We have examined the charge to see whether there is any likelihood that the conviction may rest upon what the defendant said rather than upon what he did. The instructions upon the disorderly conduct statute were expressed in general terms with no reference to the evidence or the operative facts necessary to warrant conviction. Although the jury requested a further definition of disorderly conduct after the initial charge, the court merely repeated its prior instruction with no additional clarification. Since we must, with respect to constitutional claims, follow the standard that harmlessness of the error must be established beyond a reasonable doubt; *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Parham* v. *Warden,* 172 Conn. 126, 139, 374 A.2d 137 (1976); *Aillon* v. *State,* 168 Conn. 541, 548, 363 A.2d 49 (1975); we are unable to conclude that the error in the charge was nonprejudicial. The greater probability that the defendant's conviction rested upon his conduct rather than his words does not satisfy the requisite standard. We find error, therefore, in the insufficiency of the charge on disorderly conduct.

IV

The final claim of the defendant is that his application for a program of accelerated rehabilitation under

General Statutes § 54-76p[9] in relation to the charge of operating while under the influence in violation of § 14-227a was denied (*Higgins, J.*) erroneously. In *State* v. *Anonymous (1980–5)*, 36 Conn. Sup. 527, 531, 416 A.2d 168 (1980), we held that operating while under the influence was an offense encompassed by the word "crime" in § 54-76p and, therefore, reversed the decision of the trial court that accelerated rehabilitation was jurisdictionally unavailable in such a case. We stated that use of the program was "discretionary with the court and that such discretion must be exercised not only in reviewing the qualifications of the offender but also in considering the nature of the particular offense and the circumstances of its commission." Id., 531–32.

When the defendant's application for accelerated rehabilitation was presented to the court, the prosecutor offered to present the testimony of one of the

---

[9] General Statutes § 54-76p (now § 54-56e) provides as follows: "PRETRIAL REHABILITATION PROGRAMS. There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime, not of a serious nature. The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to an accused who, the court believes, will probably not offend again and who has no previous record of conviction of crime and who states under oath in open court under the penalties of perjury that he has never had such program invoked in his behalf, provided the defendant shall agree thereto and provided notice has been given by the accused, on a form approved by rule of court, to the victim or victims of such crime, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. Unless good cause is shown, this section shall not be applicable to persons accused of a class A, class B, or class C felony. Any defendant who enters such program shall agree to the tolling of any statute of limitations with respect to such crime and to a waiver of his right to a speedy trial. Any such defendant shall appear in court and shall be released to the custody of the commission on adult probation for such period, not exceeding two years, and under such conditions as the court shall order. If the defendant refuses to accept, or, having accepted, violates such conditions, his case shall be brought to trial. If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges."

police officers concerning the circumstances of the arrest. He also offered to read the report he had received from the police into the record. The defendant stated that those matters should be considered later, presumably after the report of the probation officer concerning the defendant's background and eligibility had been received. The trial court stated that before any referral to the probation department for a report it should be determined whether the offense was of a "serious nature." Section 54-76p by its terms applies only to "persons accused of a crime, not of a serious nature." The court declared its view that operating a motor vehicle under the influence was a crime of a "serious nature" and proceeded to deny the defendant's application.

In *State* v. *Anonymous (1980–5)*, supra, we indicated that in exercising its discretion upon an application for accelerated rehabilitation the trial court must consider both "the nature of the particular offense and the circumstances of its commission." In denying the defendant's application wholly on the basis of the charge, the trial court failed to consider the circumstances under which the offense was committed as required for a proper exercise of discretion. Except where the offense falls within one of the categories specifically mentioned in the statute as disqualifications, the determination of whether the crime is of a "serious nature" ordinarily depends upon the facts surrounding its commission. Although it is possible that some offenses, in addition to those named in the statute, may be so heinous that a conclusion of their "serious nature" may be reached without any knowledge of the factual basis for the charge, we cannot say that every instance of operating under the influence must inevitably be so categorized. Despite the great danger to the public usually created by intoxicated drivers, it is possible to envision the extraordinary situation of an arrest upon such a charge

where no substantial traffic hazard has been created and where the motorist ceased his operation of the vehicle after proceeding a short distance and realizing that his ability to drive was impaired. A court might reasonably conclude that under such extenuating circumstances the offense was not serious enough to warrant the denial of accelerated rehabilitation. Since we have determined that not every occasion of operating while under the influence constitutes a crime of a "serious nature" so as to preclude the availability of § 54-76p, we must find error in the failure of the trial court to give any consideration to the circumstances of the commission of the offense before denying the defendant's application. The defendant was entitled to a reasonable exercise of the court's discretion in considering his application and he has not received it.

There is error in respect to the conviction of the defendant for disorderly conduct and the case is remanded for a new trial upon that charge.

There is no error with respect to the trial resulting in the conviction of the defendant for operating under the influence, but there is error in the denial of his application for accelerated rehabilitation. The judgment on that charge is vacated for the purpose of enabling the court to consider this application, but it is ordered to be reinstated if the application is not granted.

In this opinion DALY, J., concurred.

BIELUCH, J. (dissenting). I disagree with that portion of the opinion which finds error in the denial of the defendant's application for accelerated rehabilitation. There are several steps involved in the procedure of applying for accelerated rehabilitation. These are outlined on the application form furnished by the court as follows: (1) Application; (2) Oath; (3) 1st Order, and (4) 2nd Order (if applicable).

The statute authorizing accelerated rehabilitation; General Statutes § 54-76p (now § 54-56e); provides in relevant part: "There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime, not of a serious nature. The court *may, in its discretion,* invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to an accused who, the court believes, will probably not offend again and who has no previous record of conviction of crime and *who states under oath in open court under the penalties of perjury* that he has never had such program invoked in his behalf . . . ." (Emphasis added.) The application signed by the defendant and his attorney recited that "the Accused never had such program invoked is [sic] his/her behalf and *will so state* in open court under the penalties of perjury." (Emphasis added.) This the defendant never did. The required oath was never given in court. The record of the court proceedings and the application form confirm this statutory deficiency. The transcript of events fails to show that any such oath was given by the defendant. The oath on the application form is completely unexecuted. The assumption was made by all concerned in the discussion and consideration of the application for accelerated rehabilitation that it was proper in form and met all of the statutory requirements, but this was erroneous in fact. The defendant's failure to comply with the statutorily prescribed procedures and conditions precluded any further consideration or grant of accelerated rehabilitation and supports the court's denial of the application.

The statute is plain and unequivocal, and the application form tracks its terms in clear and precise steps. The court is bound to follow the provisions of the law. There is no room left for judicial deviation from the specified mode of application. The law is to be interpreted and followed according to the intent of

the legislature apparent upon its face in the express language of the statute. We must follow the judicial "principle that '[w]e have no choice but to interpret the statutes as they are written.' *Mancinone* v. *Warden,* 162 Conn. 430, 439, 294 A.2d 564." *Liistro* v. *Robinson,* 170 Conn. 116, 129, 365 A.2d 109 (1976). Where the statutory requirement that one be sworn is of the essence of legislation such as that which is now under consideration, the prescribed oath is mandatory. *Daly* v. *Fisk,* 104 Conn. 579, 583, 134 A. 169 (1926).

After the completed application for accelerated rehabilitation has been sworn to by the defendant, it is then presented to the court for the "1st Order," the third step in the proceedings. At this time the judge must determine whether he will allow the application to be continued with an order of notice to the victim or victims "of the opportunity to be heard on this matter" on a prescribed form. The alternative to a continuance is an order that "[t]he foregoing Application is denied." In deciding whether to deny the application at this stage of the proceedings, the court must determine whether the crime charged was of a serious nature. Before arriving at this decision, the judge must consider (1) the nature of the specific offense itself and, thereafter, if necessary for such a conclusion, (2) the circumstances surrounding its commission by the defendant. Once a determination is made by the court that the crime charged is of a serious nature, with or without a review of the particulars of the charge, the application may be denied by the court.

The trial court was reasonable in concluding that the charge against the defendant of operating a motor vehicle while under the influence of intoxicating liquor was of a serious nature. It is an acknowledged fact that accidents caused by drunken drivers kill many people in our state annually. Because of such conse-

quences, the public at large considers drunken driving to be a serious problem which has both human and economic costs.

Indeed, our legislature has recognized the increasing concern about this problem and has recently enacted legislation which demonstrates the seriousness with which it views drunken driving. Public Acts 1980, No. 80-438, for example, deals with the problem in the following manner. Section 1 of the act requires compulsory treatment or rehabilitation in order to reverse a license suspension or revocation following a conviction under § 14-227a. Section 3 significantly increases the penalties for conviction under this statute. The monetary fine is increased from not less than $150 nor more than $500 to not less than $300 nor more than $1000, and provides that two days of any sentence imposed for a second or subsequent offense must be served without suspension or reduction. Further, these changes in the statute strengthen the already existing seriousness which the legislature has affixed to this statutory scheme. In addition, § 4 of the act amends General Statutes § 14-227b by extending the provision for license suspension or revocation after refusal of an operator to take a blood, breath or urine test to determine the presence of alcohol in his system at the time of the alleged offense. This provision now makes license suspension or revocation compulsory, regardless of whether the charge was nolled or changed.[1]

More recently, the seriousness of the problem of drunken drivers resulted in the legislature's enactment of Public Acts 1981, No. 81-446: "An Act Concerning the Pretrial Alcohol Education System and

---

[1] Such mandatory suspension or revocation requires that the judge, upon request of the prosecuting attorney, make the following findings: (1) whether or not there were reasonable grounds for the test to be requested; (2) whether or not the refusal was made knowingly; and, (3) whether such person was operating such motor vehicle.

the Prosecution of Violations for Operating Under the Influence of Alcohol." This act creates a specific form of rehabilitation for violators of § 14-227a. Section 1 of the act provides a pretrial education and treatment program for first offenders. It further amends the statute by increasing the admissibility and competence of such tests as evidence of driving under the influence. Section 2 provides that in lieu of the two-day minimum mandatory sentence discussed previously, the court may order violators to participate in an alcohol education and treatment program. Further, it provides that a second or subsequent offender "shall not be charged or prosecuted for a lesser violation without the approval of the court." Section 3 provides for compulsory suspension of a license by the commissioner of motor vehicles for an operator's refusal to submit to such a test. Reinstatement of one's license is allowed after a hearing upon limited procedural grounds. Finally, and most significantly, the act expressly prohibits accelerated rehabilitation as provided by General Statutes § 54-56e for persons charged with drunken driving.

Although not effective until October 1, 1981, this act represents in clear terms the seriousness with which the legislature views the problem of drunken driving. I am convinced, therefore, that the majority opinion is incorrect in its refusal to conclude that every instance of operating under the influence may be considered a serious offense, thereby constituting an exception to the accelerated rehabilitation statute. Furthermore, the act demonstrates that the legislature never intended that the general provisions for accelerated rehabilitation under § 54-56e be applicable to drunken driving because of its serious nature. In view of the trend for pretrial rehabilitation and education of offenders, the legislature has now for the first time provided for the accelerated rehabilitation of drunken drivers under appropriate circumstances and conditions.

The trial judge's determination that the serious nature of the charge against the defendant precluded any further consideration of his application for accelerated rehabilitation and compelled its denial on the "1st Order" should not be disturbed by this court on review. "In *Hayward* v. *Plant,* 98 Conn. 374, 382, 119 A. 341, the general rule is stated to be: 'Judicial discretion is always a legal discretion. Its abuse will not be interfered with on appeal to this court except in a case of manifest abuse and where injustice appears to have been done.' " *Grievance Committee* v. *Nevas,* 139 Conn. 660, 666, 96 A.2d 802 (1953). The judge may in his judicial discretion consider the very nature of the offense, as was done in this case, to be serious and beyond consideration for accelerated rehabilitation. The majority opinion acknowledges this discretion in other possible cases, but not as to drunken driving. It is led to this illogical conclusion by substituting "serious consequences" of a crime for "serious nature" of a crime in its analysis. Operating a motor vehicle under the influence of intoxicating liquor may reasonably be found to be a serious offense by its very nature under all circumstances. Its serious nature attaches at the commencement of such operation with all its attendant risks of injury and death and is not determined ex post facto by the consequences of the act or the circumstances of the defendant's apprehension as in the example suggested by the majority opinion. There has been no abuse of discretion by the trial court in its rejection of the defendant's application for accelerated rehabilitation, and no injustice was done to him. He was properly convicted by the jury, and this conviction has been upheld by this court.

The majority opinion's suggestion that the court should have held a hearing on the seriousness of the crime, in any event, is not appropriate in this case. First, at the time of the application the prosecutor

offered for the court's consideration (1) the testimony of one of the officers involved in the defendant's apprehension and arrest, and (2) the officer's report to the prosecutor, being "the statement of the people that were involved that gave rise to the arrest in this case." Defense counsel disagreed with this procedure, saying that "this is to be considered at a future time, you know, by the Court – in the ultimate disposition of the case." The court then stated: "Well, I think that under that contention you're right because I think that the first determination has got to be made by the Court before it goes to Probation whether it is appropriate in view of the charges." If the court erred, as the majority opinion holds, then it was led to this error by the defendant, and not by the prosecutor who was denied in his effort to substantiate the seriousness of the particular arrest.

Second, a review of the transcript reasonably establishes that the circumstances preceding and surrounding the defendant's arrest were serious in nature and even after the majority opinion's required inquiry do not warrant further accelerated rehabilitation consideration.

I would find no error.