STATE OF CONNECTICUT *v.* MICHAEL SPENDOLINI
(10384)

PETERS, HEALEY, PARSKEY, PICKETT and COVELLO, Js.

Argued December 2, 1982—decision released January 25, 1983

*Harold J. Geragosian,* with whom, on the brief, was *Joseph P. Cianci,* for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom were *Glenn E. Coe,* assistant state's attorney, and, on the brief, *Austin J. McGuigan,* chief state's attorney, and *Scott Murphy,* assistant state's attorney, for the appellee (state).

PARSKEY, J.  The defendant was charged with the crime of perjury in violation of General Statutes § 53a-156. In this appeal the defendant challenges the court's denial of his motion for accelerated rehabilitation. Although at an earlier stage of these proceedings we denied the state's motion to dismiss the appeal for lack of subject matter jurisdiction, the state has nevertheless pursued the jurisdictional issue in its brief. Upon reexamination we are persuaded that we have no jurisdiction of the subject matter and therefore the appeal must be dismissed.

Appeals to this court may be taken from final judgments or actions of the Superior Court. General Statutes § 51-197a. In a criminal case the imposition of sentence is the final judgment of the court. *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980); *State* v. *Moore,* 158 Conn. 461, 463, 262 A.2d 166 (1969). Interlocutory rulings in criminal cases generally are not appealable. *United States* v. *MacDonald,* 435 U.S. 850, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978) (denial of motion for speedy trial); *Cogen* v. *United States,* 278 U.S. 221, 49 S. Ct. 118, 73 L. Ed. 275 (1929) (denial of motion

for return of seized property); *State* v. *Grotton,*
supra (granting state's motion to obtain non-
testimonial evidence from the defendant); *State*
v. *Asherman,* 180 Conn. 141, 429 A.2d 810 (1980)
(denial of motion for new trial); *State* v. *Kemp,*
124 Conn. 639, 1 A.2d 761 (1938) (permitting
defendant to inspect minutes of grand jury); *State*
v. *Olds,* 171 Conn. 395, 404, 370 A.2d 969 (1976)
(orders denying or fixing amount of bail). "This
insistence on finality and prohibition of piecemeal
review discourage [sic] undue litigiousness and
leaden-footed administration of justice, particularly
damaging to the conduct of criminal cases." *DiBella*
v. *United States,* 369 U.S. 121, 124, 82 S. Ct. 654,
7 L. Ed. 2d 614 (1962).

We have recognized several narrowly defined
exceptions[1] to this rule of finality.[2] These are cases
in which an otherwise interlocutory ruling chal-
lenged on appeal cannot, if erroneous, later be
remedied by suppression of the evidence or reversal
of the conviction after trial. In *State* v. *Lloyd,* 185
Conn. 199, 440 A.2d 867 (1981), a case involving
the trial court's acceptance of the state's entry
of a nolle prosequi, we permitted an appeal
from the denial of the defendant's motion to dis-
miss in order to protect the defendant from the
possibility of being exposed to repeated initiation
and termination of charges where the defendant's

---

[1] *State* v. *Acquin,* 177 Conn. 352, 416 A.2d 1209 (1979), which
would appear to widen the category of exceptions has been confined
to its facts. *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871
(1980).

[2] Appeals in criminal cases can only be from final judgments.
Ordinarily the imposition of sentence is that judgment. The nar-
rowly defined exceptions to this rule of finality refer to orders or
decisions made at an earlier stage of criminal proceedings which
possess all of the attributes of a final judgment even though they
are interlocutory in form.

rights could not otherwise be vindicated. In *State* v. *Bell,* 179 Conn. 98, 425 A.2d 574 (1979), we acknowledged our jurisdiction to review an order denying an application to be adjudicated a youthful offender where to do otherwise might deprive the defendant of his statutory right to a private hearing with sealed records. General Statutes §§ 54-76h, 54-76*l*, 54-76o. In *State* v. *Moeller,* 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 63 L. Ed. 2d 320 (1979), we reviewed an order denying the defendant's motion to dismiss where the claimed ground of dismissal was that the state prosecution placed the defendant in double jeopardy. The common thread running through these exceptions is that the right asserted would be lost, probably irreparably, unless interlocutory review was permitted. See *Abney* v. *United States,* 431 U.S. 651, 658, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977).

General Statutes § 54-56e,[3] establishes a discretionary pretrial diversionary program in certain criminal cases. It suspends criminal prosecution for a stated period of time subject to such conditions as the court shall order. If the defendant

[3] "[General Statutes] Sec. 54-56e. (Formerly Sec. 54-76p). ACCELERATED PRETRIAL REHABILITATION. There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime, not of a serious nature. The court may, in its discretion, invoke such program on motion of the defendant or on motion of a state's attorney or prosecuting attorney with respect to an accused who, the court believes, will probably not offend again and who has no previous record of conviction of crime and who states under oath in open court under the penalties of perjury that he has never had such program invoked in his behalf, provided the defendant shall agree thereto and provided notice has been given by the accused, on a form approved by rule of court, to the victim or victims of such crime, if any, by registered or certified mail and such victim or victims have an opportunity to be heard thereon. Unless good cause is shown, this section shall not be applicable to persons

satisfactorily completes the probationary period he may then apply to the court for dismissal of the charges lodged against him. The main thrust of the statute is suspension of prosecution. Motions to stay proceedings are interlocutory. Action on such motions is not appealable whether the motion is granted; *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 293–94, 320 A.2d 797 (1973); *Gores* v. *Rosenthal,* 148 Conn. 218, 221, 169 A.2d 639 (1961); or denied. *Russell Lumber Co.* v. *Smith & Co.,* 82 Conn. 517, 74 A. 949 (1909).

Except in double jeopardy cases; *Abney* v. *United States,* supra, 659–60; a defendant does not enjoy a "right not to be tried." See *United States* v. *MacDonald,* supra, 860 n.7. Nor does the accelerated rehabilitation statute create such a right.[4]

accused of a class A, class B, or class C felony or to any youth who has previously been adjudged a youthful offender under the provisions of sections 54-76b to 54-76n, inclusive. Any defendant who enters such program shall agree to the tolling of any statute of limitations with respect to such crime and to a waiver of his right to a speedy trial. Any such defendant shall appear in court and shall be released to the custody of the office of adult probation for such period, not exceeding two years, and under such conditions as the court shall order. If the defendant refuses to accept, or, having accepted, violates such conditions, his case shall be brought to trial. If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges."

[4] The dissenting opinion's contention that the legislature intended, in the accelerated rehabilitation act, to create a right not to be tried was answered in a comparable situation many years ago by the United States Supreme Court in *Heike* v. *United States,* 217 U.S. 423, 30 S. Ct. 539, 54 L. Ed. 821 (1910). In *Heike,* Congress granted statutory transactional immunity from prosecution or punishment to any defendant called upon to testify before a grand jury. Heike raised this defense and when it was decided against him, sought a writ of error in the Supreme Court. The government's motion to dismiss the writ upon the ground that the judgment was not final was granted. The court observed (p. 431): "In view of the provisions of this act it is argued that the complete immunity

Unlike the situation in *State* v. *Bell,* supra, no privacy rights are implicated in the diversionary program. The motion seeking accelerated rehabilitation whether made by the state or the defendant is heard in open court. Nor is access to the program irreparably lost if the defendant should be tried and convicted. See *State* v. *Lavorgna,* 37 Conn. Sup. 767, 437 A.2d 131 (1981). Because this case does not come within the narrow confines of existing exceptions to the finality rule for appeal and because no cogent reason has been shown for enlarging the criteria so as to cover accelerated rehabilitation cases, we lack jurisdiction to hear the appeal.

The appeal is dismissed.

In this opinion PICKETT and COVELLO, Js., concurred.

PETERS, J. (dissenting). Because I believe that the conclusion this court reaches today is inconsistent with the rule of *State* v. *Bell,* 179 Conn. 98, 425 A.2d 574 (1979), I dissent.

---

promised is not given unless the person entitled to the benefits of the act is saved from prosecution, for, it is contended, that if the act is to be effective it means not only immunity from punishment, but from prosecution as well. It is admitted in the brief of the learned counsel for the plaintiff in error that prosecution must necessarily proceed so far as an indictment and apprehension are concerned, but when the plea of immunity under this act is entered, if well taken, the prosecution must be ended, as the statutes provide that no person shall be prosecuted, etc. But we are of opinion that the statute does not intend to secure to a person making such a plea immunity from prosecution, but to provide him with a shield against successful prosecution, available to him as a defense, and that when this defense is improperly overruled it may be a basis for the reversal of a final judgment against him. Such promise of immunity has not changed the Federal system of appellate procedure, which is not affected by the immunity statute, nor does the immunity operate to give a right of review upon any other than final judgments."

In *State* v. *Bell*, as the majority opinion states, we acknowledged our jurisdiction to review an order denying an application to be adjudicated a youthful offender pursuant to General Statutes §§ 54-76h, 54-76*l*, and 54-76*o*. We there applied to a statutorily-created right the undisputed principle that interlocutory review, although disfavored, is available if an error in a challenged interlocutory ruling cannot be remedied by subsequent reversal of a conviction after trial. In *Bell*, the unremediable risk of error arose out of a youthful offender's statutory right to a private hearing with sealed records. "Subsequent criminal proceedings, no matter what the eventual outcome, cannot regain for the defendant the privacy lost through the denial of his application and consequent public trial." *State* v. *Bell*, supra, 99.

The statute establishing accelerated pretrial rehabilitation, General Statutes § 54-56e, concededly implicates no privacy rights. Instead, it offers, to qualified defendants, "a pretrial program" under which a qualified defendant "shall be released to the custody of the office of adult probation . . . under such conditions as the court shall order. . . . If such defendant satisfactorily completes his period of probation, he may apply for dismissal of the charges against him and the court, on finding such satisfactory completion, shall dismiss such charges." As I read this statute, eligible defendants are given two separate and distinct rights: the right to a pretrial suspension of criminal proceedings and the right to dismissal of criminal charges upon successful completion of the stipulated period of probation. Although access to a probationary resolution of criminal charges can be restored after an erroneous conviction, I do not understand how access to *pretrial* suspension can ever be regained.

The majority opinion concludes that the accelerated rehabilitation statute, unlike the constitutional privilege against double jeopardy, does not create "a right not to be tried." I take it that the majority does not deny the legislature the power to create such a right. We are then left with a question of statutory interpretation: having the power to do so, did the legislature, when it enacted the accelerated rehabilitation program, create a conditional right not to be tried? I believe that a program whose very purpose is a pretrial suspension of prosecution necessarily creates such a right. For that reason, I find distinguishable cases such as *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 293–94, 320 A.2d 797 (1973), and *Gores* v. *Rosenthal,* 148 Conn. 218, 221, 169 A.2d 639 (1961), where we held interlocutory and unreviewable stays ancillary on the one hand to summary process proceedings and on the other to arbitration proceedings.

Nor am I persuaded that *Heike* v. *United States,* 217 U.S. 423, 30 S. Ct. 539, 54 L. Ed. 821 (1910), compels a different result. *Heike* determined only that Congress, in enacting the federal immunity statute, intended to create a shield from successful prosecution rather than a defense to prosecution itself. Nothing in *Heike* precludes a state legislature from evidencing a different and more sweeping intent. Furthermore, the purposes served by the federal immunity statute and the state accelerated rehabilitation program are clearly distinguishable. Whereas the federal statute is designed to encourage witnesses to cooperate with the judicial process, and necessarily entails some exposure to legal proceedings, the state statute is intended to bypass prosecutorial proceedings and to keep accelerated rehabilitation cases off the docket

altogether. 16 H. R. Proc., Pt. 11, 1973 Sess.,
p. 5713. Finally, *Heike's* precedential vitality is
undermined, at least in part, by its reliance on
rulings forbidding pretrial review of adjudication
of double jeopardy claims. *Heike* v. *United States,*
supra, 432–33. These rulings have been rejected
by *Abney* v. *United States,* 431 U.S. 651, 662, 97
S. Ct. 2034, 52 L. Ed. 2d 651 (1977). Although, on
its own facts, *Heike* has been recently reaffirmed;
*United States* v. *MacDonald,* 435 U.S. 850, 860 n.7,
98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978); the validity
of *Heike's* broader implications is at least doubtful.
*United States* v. *Alessi,* 544 F.2d 1139, 1151–52 (2d
Cir.), cert. denied, 429 U.S. 960, 97 S. Ct. 384, 50
L. Ed. 2d 327 (1976).

The accelerated rehabilitation statute, because it,
in contradistinction to other statutes, creates a pre-
trial right to suspension of criminal proceedings,
permits an immediate interlocutory appeal. Like
the defendant in *State* v. *Bell,* 179 Conn. 98, 99, 425
A.2d 574 (1979), this defendant cannot regain,
through subsequent reversal of criminal proceed-
ings, the statutory right "lost through the denial of
his application and the consequent public trial."
On more traditional reasoning, the denial of accel-
erated rehabilitation also meets the test of a final
judgment established in *Gores* v. *Rosenthal,* supra,
and *Prevedini* v. *Mobil Oil Corporation,* supra.
Under that test, a judgment is final if its effect is
to conclude the rights of the appealing party so
that further proceedings after the ruling cannot
affect those rights. Further proceedings in a crim-
inal trial, whose purpose is to determine whether
the defendant has committed the crime with which
he has been charged, cannot affect his right to a
pretrial suspension of inquiry into guilt or inno-

cence. The accelerated rehabilitation program, because it substitutes a probationary period for a criminal proceeding, cannot logically be affected by the outcome of such a proceeding. Even if the defendant were successful in establishing his innocence, he would still have suffered the burden of the trial from which the statute offered him conditional shelter.

Since I would therefore adjudicate this appeal on its merits, I would have to reach the question of the propriety of the trial court's order denying the defendant access to the program of accelerated rehabilitation. In the present circumstances, however, discussion of the merits would serve no useful purpose and might have undesirable implications for further review in the future. I therefore limit this dissent to the jurisdictional question.

In this opinion HEALEY, J., concurred.