STATE OF CONNECTICUT *v.* BRIAN FIELDING
(SC 18184)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 8—officially released May 4, 2010

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David R. Shannon*, senior assistant state's attorney, for the appellant (state).

*Hugh F. Keefe*, with whom, on the brief, was *Nancy Fitzpatrick Myers*, for the appellee (defendant).

*Opinion*

KATZ, J. The state appeals, upon our grant of certification, from the judgment of the Appellate Court dismissing its appeal from the trial court's order compelling it to provide the defendant, Brian Fielding, with copies of material that had been seized from his home in connection with his arrest for possession of child pornography. The sole issue in this certified appeal is whether the Appellate Court properly determined that the trial court's order was not a final judgment and, therefore, that it lacked jurisdiction over the appeal. We conclude that the Appellate Court properly dismissed the appeal, and, accordingly, we affirm the judgment of that court.

The record reveals the following undisputed facts and procedural history. In September, 2006, the state charged the defendant by information with possession of child pornography in the third degree in violation of

General Statutes § 53a-196f.[1] Thereafter, in February, 2007, the defendant filed a motion requesting that the state be ordered to provide him with copies of all of the alleged pornographic materials seized from his home that formed the basis of his prosecution. The defendant claimed that such disclosure was necessary to allow his forensic experts to evaluate the evidence and to prepare a defense. At the hearing on the motion in April, 2007, the trial court questioned the defendant about whether such disclosure was prohibited by statute. The defendant acknowledged that there is a federal law that bars the disclosure of copies of child pornography to a federal criminal defendant; see 18 U.S.C. § 3509 (m);[2] but argued that this law did not apply in a state criminal prosecution. Additionally, although he recognized that legislation patterned after the federal law

[1] General Statutes § 53a-196f (a) provides: "A person is guilty of possessing child pornography in the third degree when such person knowingly possesses fewer than twenty visual depictions of child pornography."

[2] Title 18 of the United States Code, § 3509 (m) provides: "Prohibition on Reproduction of Child Pornography.—

"(1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court.

"(2) (A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.

"(B) For the purposes of subparagraph (A), property or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial."

This provision was § 504 of a federal act entitled the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (federal act). The preamble to the federal act sets forth its purpose as follows: "To protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims."

had been proposed and was pending in the General Assembly; see House Bill No. 7269, 2007 Sess. (H.B. 7269); the defendant argued that this bill, even if it were to be enacted into law, would not take effect until October, 2007. In response, the state argued that the court should view the federal law as persuasive authority and expressed the belief that the distribution of copies of child pornography to the defendant unnecessarily risked repeating the victimization of the children depicted in the alleged pornographic material.

The court took the matter under advisement and, thereafter, by order dated June 18, 2007, granted, with certain restrictions, the defendant's motion for disclosure, ordering the state to provide the defendant with copies of the alleged child pornography within forty-five days of its order (June 18 order). Those restrictions included that defense counsel be responsible for keeping and safeguarding the duplicated material, that the material be "secured and inaccessible to anyone besides defense counsel," and that defense counsel "may allow experts to review said materials only in accordance with this order."[3]

---

[3] The court's order provided in relevant part: "Said materials are restricted in the following ways:

"(a) The making of additional copies is strictly forbidden;

"(b) The defendant . . . is allowed access to the evidence ONLY under [defense counsel Hugh] Keefe's supervision.

"(c) Attorney Keefe is responsible for the keeping and safeguarding of said disclosed materials, and the evidence must be secured and inaccessible to anyone besides defense counsel who will be held personally and professionally responsible for any 'unauthorized' distribution of said materials.

"(d) Attorney Keefe may allow experts to review said materials only in accordance with this order.

"(e) Access by any other parties is allowed only upon further court orders.

"(f) Any computer used to access the protected materials for inspection must have adequate firewall protection in place to protect the materials from Internet invasion and must be cleared of any traces after inspection.

"(g) The 'copies' of all evidence shall be promptly returned at the end of the criminal proceedings. (Upon plea or verdict)."

On or about June 22, 2007, the state moved for reconsideration of the June 18 order on the basis of the fact that H.B. 7269 had passed in the House of Representatives and the Senate on June 5 and 6, 2007, respectively, and currently was awaiting the governor's signature. The court held a hearing on the motion for reconsideration on July 23, 2007, by which time, as the state noted to the court, H.B. 7269 had been signed into law by the governor as part of No. 07-246 of the 2007 Public Acts[4] (P.A. 07-246), and was scheduled to take effect on Octo-

---

[4] Public Acts 2007, No. 07-246, § 2, was codified at General Statutes § 54-86m, which provides: "*Notwithstanding section 54-86a*, in any criminal proceeding, any property or material that constitutes child pornography shall remain in the care, custody and control of the state, and a court shall deny any request by the defendant to copy, photograph, duplicate or otherwise reproduce any property or material that constitutes child pornography so long as the attorney for the state makes the property or material reasonably available to the defendant. Such property or material shall be deemed to be reasonably available to the defendant if the attorney for the state provides the defendant, the defendant's attorney or any individual the defendant may seek to qualify to furnish expert testimony at trial, ample opportunity for inspection, viewing, and examination of the property or material at a state facility or at another facility agreed upon by the attorney for the state and the defendant. For the purposes of this section, 'child pornography' shall have the same meaning as in section 53a-193." (Emphasis added.)

General Statutes § 54-86a provides in relevant part: "(a) Upon motion of a defendant at any time after the filing of the indictment or information, and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the court shall order the attorney for the state to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements, admissions or confessions made by the defendant; (2) books, papers, documents or tangible objects obtained from or belonging to the defendant or obtained from others by seizure or process; (3) copies of records of any physical or mental examinations of the defendant; and (4) records of prior convictions of the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known to the attorney for the state or to the defendant.

"(b) An order of the court granting relief under subsection (a) of this section shall specify the time, place and manner of making the discovery and inspection permitted and may prescribe such terms and conditions as are just. . . ."

ber 1, 2007. See General Statutes § 2-32 ("[a]ll public acts, except when otherwise therein specified, shall take effect on the first day of October following the session of the General Assembly at which they are passed"). Public Act 07-246, which ultimately was codified at General Statutes § 54-86m, provided in relevant part that "any property or material that constitutes child pornography shall remain in the care, custody and control of the state" and that "a court shall deny any request by the defendant to copy, photograph, duplicate or otherwise reproduce any property or material that constitutes child pornography so long as the attorney for the state makes the property or material reasonably available to the defendant. . . ." See footnote 4 of this opinion.

On the basis of the passage of P.A. 07-246, the state argued that "it would be illegal" for it to duplicate the alleged child pornography and provide it to defense counsel. The state reiterated its argument that the distribution of duplicated pornographic material to the defendant "indirectly victimiz[ed] the victims again" and was inconsistent with the state's policy not to "turn over contraband to defendants . . . or their experts . . . ." The state further argued that, despite the best of intentions and motives of all concerned, the duplication and disclosure of the material posed a risk of unauthorized dissemination. The state urged that this risk could be avoided, while at the same time adequately securing the defendant's right to prepare a defense, by allowing the defendant and his expert full access to the material as it remained in the care, custody and control of the *state*. The defendant responded that compliance with the order was not unlawful because: (1) the June 18 order had been issued prior to the October 1, 2007 effective date of P.A. 07-246; and (2) the forty-five day deadline set by the court for compliance with its order,

August 2, 2007, also would predate the effective date of the public act.

At the conclusion of the hearing, the court orally denied the state's motion for reconsideration, ruling that its June 18 order adequately protected against the risk of unauthorized redistribution of the duplicated material. Regarding P.A. 07-246, the court essentially agreed with the defendant's view that it was not applicable because this provision had been pending, but not enacted, at the time that the disclosure order was issued, and because the court's order called for disclosure to occur before the public act's effective date of October 1, 2007.

On July 30, 2007, the state sought permission to appeal from the trial court's June 18 order, as well as from the court's denial of its motion to reconsider that order in light of the passage of the public act. At a hearing on the matter, the defendant asserted that he had no objection to the state's motion, and the court thereafter granted the state permission to appeal.

On June 4, 2008, the Appellate Court summoned the parties to appear before a motions calendar session of the court to explain why the state's appeal should not be dismissed for lack of a final judgment. Over the state's objection, the Appellate Court dismissed the state's appeal. Thereafter, this court granted the state's petition for certification, limited to the following issue: "Did the Appellate Court properly dismiss the appeal of the [state] for lack of a final judgment?" *State* v. *Fielding*, 288 Conn. 916, 954 A.2d 186 (2008).

On appeal, the state claims that the Appellate Court improperly dismissed its appeal because the June 18 order is an appealable interlocutory order under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In the alternative, the state asserts that its appeal should be

addressed pursuant to General Statutes § 52-265a[5] because this case involves a matter of substantial public interest. The defendant agrees that applying the trial court's order would destroy the state's claimed right under § 54-56m to maintain exclusive control over the materials. The defendant also approves the exercise of this court's jurisdiction pursuant to § 52-265a.[6] We conclude that the discovery order in the present case is not a final judgment and, therefore, is not appealable

[5] General Statutes § 52-265a provides: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

[6] We note that the defendant raises an additional issue relating to the court's June 18 order. Specifically, the defendant had filed an appeal from the June 18 order challenging some of the restrictions that the trial court had placed on disclosure; see footnote 3 of this opinion; which the Appellate Court also dismissed pursuant to a motion by the state. In his brief to this court, the defendant has requested reinstatement of that appeal and maintains that this court has jurisdiction to consider both the state's appeal as well as his own. Because the defendant did not seek certification to appeal from the Appellate Court's dismissal of his appeal and resolution of his claim is not intertwined with the state's certified issue, we decline to consider this issue. See *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 783 n.15, 961 A.2d 349 (2008) (declining to address issue outside scope of certified question); *State* v. *Nguyen*, 253 Conn. 639, 648–49 n.6, 756 A.2d 833 (2000) (addressing issues not raised in certified appeal when issues integral to resolution of certified issue).

under General Statutes § 52-263. Because we also are not persuaded that we should treat the state's petition as a public interest appeal,[7] we affirm the judgment of dismissal.

"We begin by noting that the parties' agreement on the existence of a final judgment does not confer jurisdiction on this court. The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . . Neither the parties nor the trial court . . . can confer jurisdiction upon [an appellate] court. . . . The right of appeal is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." (Internal quotation marks omitted.)

[7] The state asserts that, if this court determines that the trial court's ruling is not immediately appealable under *State* v. *Curcio*, supra, 191 Conn. 27, we may treat its petition for certification to appeal as a late petition for review under § 52-265a. It asserts that the trial court's order involves a matter of substantial public interest, namely, the proper balance between the state's ability to retain exclusive care, custody and control over contraband and the defendant's constitutional rights to present a defense and to confront his accusers. For the following reasons, the chief justice disagrees that the issues raised in this appeal meet the requirement of § 52-265a.

"Section 52-265a allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that involves a matter of substantial public interest and in which delay may work a substantial injustice." (Internal quotation marks omitted.) *State* v. *Kemah*, 289 Conn. 411, 414 n.2, 957 A.2d 852 (2008). Although the state frames the public interest broadly, the specific issue in the present case potentially will affect only the parties in the present case. Specifically, the state's appeal depends on whether § 54-86m applies retroactively to the June 18 order because that order and its deadline for the state's disclosure predate the statute's effective date. Because the statute now is in effect, however, there is no compelling need for the court to weigh in on the merits of that issue. Additionally, it appears that the protections put in place by the trial court in the present case sufficiently ensure that the materials at issue will be protected in accordance with the state's valid concerns. See footnote 3 of this opinion. Accordingly, this case does not present the substantial public interest at which § 52-265a is directed.

*Brown & Brown, Inc.* v. *Blumenthal,* 288 Conn. 646, 654, 954 A.2d 816 (2008). "It is equally axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review . . . appellate jurisdiction is limited to final judgments of the trial court. General Statutes § 52-263 . . . ."[8] (Citations omitted; internal quotation marks omitted.) *Doe* v. *Connecticut Bar Examining Committee,* 263 Conn. 39, 45, 818 A.2d 14 (2003).

"In a criminal proceeding, there is no final judgment until the imposition of a sentence. *State* v. *Coleman,* 202 Conn. 86, 89, 519 A.2d 1201 (1987); *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980). . . . The general rule is . . . that interlocutory orders in criminal cases are not immediately appealable. *United States* v. *MacDonald,* 435 U.S. 850, 857, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978) (denial of motion for speedy trial); *Cogen* v. *United States,* 278 U.S. 221, 227–28, 49 S. Ct. 118, 73 L. Ed. 275 (1929) (denial of motion for return of seized property); *State* v. *Atkins,* 203 Conn. 33, 34, 522 A.2d 1234 (1987) (finding of probable cause to believe criminal offense has been committed); *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 306, 488 A.2d 778 (1985) (denial of a motion to transfer to the criminal docket) [superseded by statute as stated in *In re Keijam T.,* 221 Conn. 109, 602 A.2d 967 (1992)]; *State* v. *Longo,* 192 Conn. 85, 89, 469 A.2d 1220 (1984) (denial of motion for youthful

[8] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

offender status); *State* v. *Spendolini*, 189 Conn. 92, 97, 454 A.2d 720 (1983) (denial of motion for accelerated rehabilitation); *State* v. *Grotton*, supra, 295–96 (granting of state's motion to take nontestimonial evidence from defendant); *State* v. *Kemp*, 124 Conn. 639, 646–47, 1 A.2d 761 (1938) (permitting defendant access to grand jury minutes); compare *State* v. *Aillon*, 182 Conn. 124, 126, 438 A.2d 30 (1980), cert. denied, 449 U.S. 1090, 101 S. Ct. 883, 66 L. Ed. 2d 817 (1981) (colorable double jeopardy claim immediately appealable)." *State* v. *Ayala*, 222 Conn. 331, 339, 610 A.2d 1162 (1992).

We have recognized, however, in both criminal and civil cases, that certain otherwise interlocutory orders may be final judgments for appeal purposes, and "the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, [supra, 191 Conn. 31]." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, 295 Conn. 194, 202, 990 A.2d 853 (2010); see *State* v. *Jenkins*, 288 Conn. 610, 618, 954 A.2d 806 (2008). Under *Curcio*, interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Curcio*, supra, 31.

The state relies on the second prong of *Curcio*. "The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*,

272 Conn. 776, 785–86, 865 A.2d 1163 (2005). Moreover, "when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] is entitled. . . . The right itself must exist independently of the order from which the appeal is taken." *State* v. *Longo*, supra, 192 Conn. 92–93. "Unless the appeal is authorized under the *Curcio* criteria, absence of a final judgment is a jurisdictional defect that [necessarily] results in a dismissal of the appeal." (Internal quotation marks omitted.) *State* v. *Malcolm*, 257 Conn. 653, 667, 778 A.2d 134 (2001). We disagree that the June 18 order of disclosure satisfies this criteria.

Generally, "orders relating to discovery do not constitute a final judgment and are not appealable both because their initial determination does not so conclude the rights of the appealing party that further proceedings cannot affect those rights; *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980); *State* v. *Kemp*, 124 Conn. 639, 646–47, 1 A.2d 761 (1938); see also *State* v. *Asherman*, 180 Conn. 141, 143, 429 A.2d 810 (1980); *E. J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 627, 356 A.2d 893 (1975); *Guerin* v. *Norton*, 167 Conn. 282, 283, 355 A.2d 255 (1974); *Prevedini* v. *Mobil Oil Corporation*, 164 Conn. 287, 291–93, 320 A.2d 797 (1973); and because . . . their import is fully apprehended only after trial is concluded." *State* v. *Grotton*, supra, 180 Conn. 292. Even when faced with an appeal from a trial court order to produce files protected by the attorney-client privilege within an insurance coverage dispute, this court found that the appellant insurer had failed to meet the second prong of *Curcio*. See *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 258, 520 A.2d 605 (1987)

("[o]ur concern for the efficient operation of the judicial system, which is the practical consideration behind the policy against piecemeal litigation inherent in the final judgment rule, has induced us to dismiss appeals where statutorily created rights of privacy, no less significant than the right of confidentiality for attorney-client communications, have been at stake").

Moreover, this court has rejected the rationale advanced by the state in this case that *Curcio* must be deemed to be satisfied simply because, once the materials at issue in this case are disclosed, the proverbial horse is out of the barn. "It is a given that, once disclosed through discovery, information cannot be retrieved. If that fact alone were sufficient to permit an immediate appeal of an order to comply with a discovery request or an order denying a protective order, every reluctant witness could delay trial court proceedings by taking an interlocutory appeal. That is not our law." *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 629–30, 692 A.2d 794 (1997). In an analogous content, we have recognized that privacy interests protected by the attorney-client privilege cannot be completely restored once they have been invaded by a disclosure order; *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 257; and, even when "those accused of crimes have claimed entitlement to treatment as juveniles or youthful offenders, we have recognized that our decree after a successful appeal from a conviction cannot restore the protection the legislature intended against publicity and other consequences attending an adult criminal proceeding. [*In re Juvenile Appeal (85-AB)*, supra, 195 Conn. 311]; *State* v. *Longo*, [supra, 192 Conn. 91]. We have concluded, nevertheless, that the harm caused by delay in the disposition of criminal cases likely to result from allowing interlocutory appeals where trial courts have denied youthful offender or juvenile treatment far outweighs the need to provide

additional appellate remedies to implement the legislative purpose more effectively." *Melia* v. *Hartford Fire Ins. Co.*, supra, 258.

We explained in *State* v. *Alvarez*, 257 Conn. 782, 796, 778 A.2d 938 (2001), that we have "been disinclined . . . to extend the privilege of an interlocutory appeal in criminal cases beyond the double jeopardy circumstance. This reluctance stems principally from our concern that to allow such appeals would greatly delay the orderly progress of criminal prosecutions in the trial court . . . . [T]he opportunity to appeal in such a situation might well serve the purpose of parties who desire for their own ends to postpone the final determination of the issues. . . . It has been widely recognized that strict adherence to the final judgment rule is necessary in criminal cases because the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." (Citation omitted; internal quotation marks omitted.)

Despite this settled law, the state contends that its appeal satisfies the second prong of *Curcio* "because the June 18 order so concludes the discovery rights of the parties as they relate to the material constituting child pornography that, except for an interlocutory appeal, further proceedings cannot affect them." Integral to its claim that § 54-86m provides it with a statutory privilege to retain exclusive care, custody and control of material constituting child pornography, so long as it makes such material reasonably available to the defendant, is the state's contention that § 54-86m controls this case, regardless of its effective date of October 1, 2007. Specifically, the state contends that § 54-86m controls because either: (1) actual compliance with the discovery order will not take place until after the statute has taken effect; or (2) even if the controlling date is the one on which the order entered, June 18, 2007, the

statute is procedural and therefore applies retroactively to existing discovery orders that were still pending on the date it became effective. See *State* v. *Skakel*, 276 Conn. 633, 680–81, 888 A.2d 985 (The court noted the presumption that "procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." [Citations omitted; internal quotation marks omitted.]), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). The state posits that "[t]he . . . practical value of this statutory privilege would be destroyed if not vindicated before trial . . . ."[9]

There is one fundamental problem with the state's claim. As we previously have stated in this opinion, for an appellate court to have jurisdiction over the interlocutory ruling at issue, the state must show that the decision threatens to abrogate, or threatens the preservation of, a right that it *already* holds. "[T]he claimed right . . . must exist independently of the order from which the appeal is taken." (Citation omitted; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 231, 901 A.2d 1164 (2006). The finality of the judgment cannot depend on the appellant's ability to prevail on the merits of its appeal. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 194, 884 A.2d 981 (2005) ("we must always

---

[9] Although the state also points to the policies underlying the federal act on which § 54-86m was modeled; see footnote 2 of this opinion; the risk that compliance with the order will repeat the victimization of children, and the fact that child pornography is contraband, the state does not contend that those considerations, although not insignificant, give rise to *a right* already secured to it.

determine the threshold question of whether the appeal is taken from a final judgment *before considering the merits of the claim*" [emphasis added; internal quotation marks omitted]); *State* v. *O'Connell*, 36 Conn. App. 135, 136, 648 A.2d 168 (1994) ("[a]bsent a final judgment, we cannot reach the merits of the appeal"), cert. denied, 231 Conn. 943, 653 A.2d 824 (1994). The state's right to maintain exclusive custody over the materials subject to the court's order and its claim that that order causes the state to violate the statute's mandate, however, depend entirely on the state prevailing on the claim that it raises in this appeal, namely, that § 54-86m applies to the present case. Therefore, the state's right to possess exclusively the subject materials and preserve them from being reproduced does not exist independently of § 54-86m. Rather, the state's claim of a "right already secured"; *BNY Western Trust* v. *Roman*, supra, 295 Conn. 203; that it asserts is being threatened by the trial court's decision in the present case is predicated on a statute whose claimed application is disputed and is at the heart of the current controversy. This court squarely has rejected a purported secured right on the basis of the same logic that the state now advances. See *Massachusetts Mutual Life Ins. Co.* v. *Blumenthal*, 281 Conn. 805, 813, 917 A.2d 951 (2007) ("The plaintiff asserts that it has the right, pursuant to [General Statutes] § 35-42 [c] [of the Connecticut Antitrust Act], to have the investigative reports remain confidential. The defendant had determined, however, that the reports were not exempt from disclosure pursuant to [General Statutes] § 1-210 [a] of the [Freedom of Information Act]. Thus, the question of whether the plaintiff was entitled to have the reports remain confidential was the subject of the present action, the very issue that the plaintiff sought to have the court determine. The plaintiff has not, therefore, satisfied its appellate burden of showing that the right to confidentiality in the reports

is one that it already has."). Accordingly, we cannot conclude that the trial court's order threatened the preservation of a right *already secured* by the state and that exists independently of the order rejecting the statute's application from which the appeal has been taken.[10]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[10] We recognize that the state may not have an opportunity to vindicate its interests should the defendant be acquitted, but, as we have stated repeatedly herein, the second prong of *Curcio* requires that the trial court's order threaten the preservation of a *right* already secured and only then do we examine whether that *right* will be irretrievably lost and the party irreparably harmed unless it may immediately appeal. Because we have concluded that no such right is at issue, a lost opportunity to litigate the claim is not sufficient to overcome the policy against piecemeal litigation inherent in the final judgment rule.