******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DICKIE
E. ANDERSON, JR.
(SC 19024)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa,
Robinson and Vertefeuille, Js.

*Argued April 30—officially released September 15, 2015*

*Christopher Y. Duby*, assigned counsel, with whom, on the brief, was *William A. Adsit*, assigned counsel, for the appellant (defendant).

*Marissa Goldberg*, deputy assistant state's attorney, with whom were *Stephen M. Carney*, senior assistant state's attorney, and, on the brief, *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Dickie E. Anderson, Jr., was charged in separate informations with the murders of Rene Pellegrino and Michelle Comeau in violation of General Statutes § 53a-54a (a). After the trial court granted the state's motion to consolidate the cases based on the cross admissibility of the evidence, the jury found the defendant guilty of the murder of Pellegrino but was unable to reach a verdict in the Comeau case. The trial court therefore declared a mistrial in that case and subsequently sentenced the defendant to sixty years imprisonment for the murder of Pellegrino. On appeal from the judgment of conviction in the Pellegrino case,[1] the defendant claims that the trial court abused its discretion in consolidating the cases for trial because the state had failed to meet its burden of establishing either that the evidence was cross admissible or that the defendant would not be substantially prejudiced by the joinder. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our analysis of the defendant's claims. On June 25, 1997, the police discovered the naked body of an adult Caucasian female in the travel portion of a rural roadway in the town of Waterford. The body had been posed, with knees bent, feet together and arms outstretched. No clothing or jewelry was found in the vicinity of the body. The victim was later identified as Pellegrino, a known prostitute from the New London area who recently had been released from prison. Pellegrino's body was transported to the Office of the Chief Medical Examiner, where the medical examiner performing the autopsy determined her cause of death to be "asphyxia by neck compression," with evidence of both manual and ligature strangulation. Pellegrino, who was seventeen weeks pregnant at the time of her death, also had sustained occipital trauma, and her blood tested positive for cocaine. A vaginal swab taken from Pellegrino contained DNA from an unknown male, which was subsequently entered into a national DNA database (DNA database). After several months, the investigation into the Pellegrino murder went cold.

On May 1, 1998, the police located the naked body of another adult Caucasian female in the travel portion of a rural roadway in the town of Franklin, close to the Norwich line. The victim's body was found with her arms and legs outstretched. The first witnesses to discover the body reported seeing a vehicle parked next to the victim that sped off as the witnesses approached. No clothing or jewelry was found in the vicinity of the body. The decedent was later identified as Michelle Comeau, a convicted prostitute from the Norwich area who recently had been released from prison. The medical examiner determined Comeau's cause of death to

be "asphyxia by neck compression," with evidence of both manual and ligature strangulation. Comeau's blood also tested positive for cocaine, and, like Pellegrino, she had sustained occipital trauma. As with the Pellegrino murder investigation, the investigation into Comeau's murder went cold after several months.

In 2008, authorities, through the DNA database, matched the unknown DNA from Pellegrino's vaginal swab to the defendant, who subsequently was interviewed by the police. At first, the defendant denied knowing Pellegrino. After he was informed of the DNA match, however, the defendant admitted to having had sexual intercourse with Pellegrino the evening before and the morning of her death. According to the defendant, he gave Pellegrino crack cocaine in exchange for sex. Two witnesses, Arthur Moore and Toni Wilson, implicated the defendant in Pellegrino's death. Moore, who was the defendant's cellmate at Osborne Correctional Institution, reported to the police that the defendant told him that he had strangled a woman named Rene at his sister's house after having sex with her because the woman was being loud and demanding money. According to Moore, the defendant told him that he left the woman's body on a road in Waterford and that he would not have killed her if he had known that she was pregnant. Wilson, the defendant's former girlfriend and the mother of two of his children, informed the police that, in 1998, in a very emotional state, the defendant had confessed to killing a woman after having sex with her. According to Wilson, the woman had demanded payment for the sexual encounter, and the defendant did not want to pay, so they fought, and he killed her.

When questioned about the Comeau murder, the defendant initially denied knowing Comeau but eventually admitted that she had been a frequent visitor at the home of his father, Dickie Anderson, Sr., in the city of Norwich, and that, on the day of her death, he had exposed his penis to her in a bathroom at his father's house. The defendant described himself to the police as a "trick artist" who traded crack cocaine for sex with prostitutes. The defendant denied killing Comeau, however, or ever having had sexual intercourse with her. Two witnesses, Tanya Anderson, the defendant's sister, and Moore, the defendant's former cellmate, implicated the defendant in Comeau's murder. Moore reported to the police that the defendant had told him that a woman with whom he was having sexual relations overdosed on drugs while they were together and that he disposed of her body in Franklin. Tayna Anderson reported to the police that, after Comeau's murder, the defendant told her that he had been sexually intimate with a woman whose body was found on a road in Norwich and that he had met the woman at their father's house.

On June 1, 2010, the defendant was arrested and charged in an information with the murder of Pellegrino. On September 1, 2010, the defendant was charged in a separate information with the murder of Comeau. On November 21, 2011, the defendant filed a motion for a speedy trial in the Comeau case, and, shortly thereafter, on December 3, 2011, the state filed a motion to consolidate the cases based, in part, on the cross admissibility of the evidence. In a memorandum of law in support of its motion, the state argued, inter alia, that the evidence would be cross admissible to prove the identity of the killer based on the signature nature of the crimes and to show a common scheme or plan. Specifically, the state maintained that the murders shared a sufficient number of unique characteristics to support an inference that the same person had committed both crimes in furtherance of an overall plan, namely, "to murder prostitutes and display their dead bodies for others to find."

With respect to the signature nature of the crimes, the state's memorandum of law set forth twenty-nine similarities between the murders, which may be summarized as follows: the crimes took place ten months apart in New London County during warm weather months; the victims' naked bodies were found in the travel portion of a rural roadway approximately fifteen miles apart; the victims knew each other; there was evidence of posing in both cases; both victims were Caucasian and had dark hair; both victims were prostitutes who had recently been released from prison; no clothing or jewelry was found in the vicinity of either body; both victims were known to use crack cocaine and had cocaine in their blood at the time of death; both victims resided in New London County; both victims knew the defendant; both victims were killed on a week night; both victims were killed in a location other than where their bodies were discovered; both victims were strangled with a ligature; both victims sustained occipital trauma; and the defendant admitted to having sexual encounters with both victims on the day of their murders.

In an oral ruling following a hearing on the state's motion for consolidation, the trial court granted the motion. Thereafter, the court granted the defendant's motion for articulation of the ruling and issued a memorandum of decision explaining its reasons for consolidating the cases. In its memorandum of decision, the court stated that joinder was appropriate under the factors set forth in *State* v. *Boscarino*, 204 Conn. 714, 720–24, 529 A.2d 1260 (1987),[2] because the cases involved easily distinguishable factual scenarios, the trial would not be long or overly complex, and the allegations in both cases, although serious, were not so shocking or brutal that there was any risk that one case would be tainted by the shocking or brutal nature

of the other. The court further concluded that joinder was also appropriate because the evidence was cross admissible to prove the defendant's identity based on the signature nature of the crimes. In support of this conclusion, the court explained that "[e]ach of the characteristics of the crimes, when viewed in isolation, [was] not necessarily distinctive. When viewed as a whole, however, the characteristics reveal[ed] a distinctive combination of factors, one that strongly suggest[ed] a modus operandi inherent in the activities of but one perpetrator."

On January 16, 2012, the defendant filed a motion to sever the trials in light of this court's then recent decision in *State* v. *Payne*, 303 Conn. 538, 34 A.3d 370 (2012),[3] in which we overruled our prior case law adopting a presumption in favor of joinder in criminal cases and imposed on the state the burden of establishing either that the evidence was cross admissible or that the defendant would not be unduly prejudiced by joinder upon application of the *Boscarino* factors. See id., 547–50. At the hearing on the defendant's motion to sever, defense counsel argued that *Payne* required the court to conduct an adversarial hearing, similar to a suppression hearing, at which the state would be required to prove by a preponderance of the evidence that the evidence was cross admissible. The trial court rejected this contention, stating that *Payne* did not "in any way indicate that [the court] needs [to hold] an evidentiary hearing before it can [join cases for trial]. . . . I see nothing in the case that mandates an evidentiary hearing. It would be virtually a trial before a trial." The court further stated that, although *Payne* had eliminated the presumption in favor of joinder, there was nothing in *Payne* to suggest that this court intended to alter the customary procedure by which joinder ordinarily occurs, which, the court observed, the state had followed in the present case by filing a memorandum of law and an accompanying offer of proof in support of its motion for consolidation. The court therefore concluded: "Clearly, the presumption of joinder no longer exist[s] [after] . . . *Payne* . . . . *Payne* . . . expressly state[s] that . . . on a motion [for] join[der], the state has the burden . . . to show by a preponderance of the evidence either that the evidence in the case is cross admissible or that the defendant would not be unfairly prejudiced in regard to the *Boscarino* factors. I'll state for the record that [the] court has found that the state has, in fact, by a preponderance of the evidence, established both that the evidence is cross admissible and that there is no unfair prejudice in regard to the *Boscarino* factors."

After a joint trial of both the Comeau and Pellegrino cases, the jury found the defendant guilty of the Pellegrino murder but could not reach a verdict in the Comeau case. The trial court rendered judgment in accordance with the jury verdict in the Pellegrino case and

declared a mistrial in the Comeau case.

On appeal from the judgment of conviction in the Pellegrino case, the defendant claims that the trial court failed to hold the state to its burden, under *State* v. *Payne*, supra, 303 Conn. 547–50, of establishing either that the evidence in the two cases was cross admissible or that the defendant would not be unduly prejudiced by joinder of the cases under the *Boscarino* factors. Although the defendant's claim with respect to the cross admissibility issue is not crystal clear, he appears to argue that the state was required but failed to adduce actual testimony to provide a proper evidentiary basis for its offer of proof. The defendant argues that, instead of making such a showing, the state submitted a memorandum of law containing "[a] laundry list of alleged similarities between the two cases," unsupported by any testimony or evidence, and, further, that the trial court should not have treated that submission as a "legitimate" offer of proof. We agree with the state that its offer of proof was sufficient for purposes of its claim that the evidence was cross admissible and that the trial court did not abuse its discretion in granting the state's motion for consolidation on the basis of the cross admissibility of the evidence. We therefore need not engage in an evaluation of the *Boscarino* factors.

We first address the defendant's contention that the trial court improperly treated the state's memorandum of law in support of its motion for consolidation as an offer of proof for purposes of deciding that motion. We previously have stated that "[o]ffers of proof are allegations by the attorney . . . in which he represents to the court that he could prove them if granted an evidentiary hearing. . . . The purpose of an offer of proof has been well established by our courts. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial [court] of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review. . . . Additionally, an offer of proof should contain specific evidence rather than vague assertions and sheer speculation." (Citation omitted; internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 771, 991 A.2d 1086 (2010). As we previously indicated, in its memorandum of law the state identified twenty-nine factual similarities between the two murders, which it argued were sufficiently unusual and distinctive as to warrant a reasonable inference that the same person had committed both crimes. Contrary to the defendant's contention, these alleged similarities were not "vague assertions" based on "sheer speculation." Indeed, a review of the record reveals that all of the allegations were taken directly from the arrest warrant affidavits in both cases and that those affidavits set forth in considerable detail the evidence that the police had collected over the course of their nearly ten year investigation into the murders of both

Pellegrino and Comeau, including the medical examiner's findings, crime scene evidence, witness statements, and the defendant's own incriminating statements. This information, together with the state's arguments in support of joinder, was more than sufficient to apprise the court of the specific nature of the evidence that the state intended to present at trial, and why, in the state's view, the evidence in the two cases was, in fact, cross admissible.

To the extent that the defendant contends that an offer of proof to establish cross admissibility under *Payne* must be presented by way of an evidentiary hearing at which the state presents actual testimony, we reject that claim. As we have explained, ordinarily, an offer of proof, although evidentiary in nature, may consist of statements or submissions by counsel, and that approach was fully adequate for purposes of the present case. Of course, if a defendant were to call into question the factual validity of the state's offer of proof, the trial court would be required to address the disputed issue and, if the court deemed it necessary to resolve the dispute, conduct an evidentiary hearing for that purpose. No such factual challenge to the state's offer of proof, however, occurred in the present case.[4]

We turn, therefore, to the defendant's claim that the trial court abused its discretion in granting the state's motion for consolidation because the state failed to demonstrate that the evidence was cross admissible. The following legal principles guide our analysis of this claim. "[I]n deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." (Internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 158, 51 A.3d 1048 (2012). "[W]hen charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19." *State* v. *Payne*, supra, 303 Conn. 549–50. On appeal, however, the burden shifts to the defendant "to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury . . . ." (Internal quotation marks omitted.) *State* v. *LaFleur*, supra, 158.

In *Payne*, "[t]his court . . . revisited the principles that govern our review of a trial court's ruling on a motion for joinder. As we clarified in [*Payne*], a trial court's ruling on a motion for joinder of multiple informations for trial implicates Practice Book § 41-19 . . . [which] provides that [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. A

long line of cases establishes that the paramount concern is whether the defendant's right to a fair trial will be impaired. Therefore, in considering whether joinder is proper, this court has recognized that, [when] evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper [when] the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials. . . . [When] evidence is cross admissible, therefore, our inquiry ends." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 154–55; see also *State* v. *Crenshaw*, 313 Conn. 69, 84, 95 A.3d 1113 (2014) ("[w]e consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been cross admissible at separate trials" [internal quotation marks omitted]).

"As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him. . . . The rationale of this rule is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. . . . The fact that such evidence tends to prove the commission of other crimes by an accused does not render it inadmissible if it is otherwise relevant and material. . . . Such evidence is admissible for other purposes, such as to show intent, an element [of] the crime, identity, malice, motive or a system of criminal activity. . . .

"Our analysis of whether evidence of the uncharged misconduct is admissible is two-pronged. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions to the propensity rule. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crimes evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 161–62, 665 A.2d 63 (1995).

"The first threshold for the use of evidence of other crimes or misconduct on the issue of identity is that the methods used be sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other. . . . [I]n proffering other crime evidence [t]o prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused . . . much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature. . . . In order to

determine if this threshold criterion for admissibility has been met, [the court] must examine the proffered evidence and compare it to the charged offenses." (Citations omitted; internal quotation marks omitted.) Id., 163.

Applying these principles to the present case, we have no hesitation in concluding that the trial court did not abuse its discretion in joining the Pellegrino and Comeau cases for trial based on the cross admissibility of the evidence in each case. The similarities between the victims (both women were prostitutes and drug users), the geographic and temporal proximity of the murders (the crimes were committed ten months apart within a fifteen miles radius), the victims' cause of death (both women were strangled manually and with a ligature), and the extremely unusual and degrading manner in which the victims' bodies were disposed of after death (completely naked in the travel portion of a rural roadway), are, standing alone, distinctive enough characteristics to warrant an inference that the same person committed both crimes. Indeed, what the killer did with the victims' bodies after the murders—placing them in the middle of a road in the apparent hope that they would be discovered immediately—is itself sufficiently unusual as to suggest a type of signature. In addition, H. Wayne Carver II, the chief medical examiner, testified at trial that, out of the more than 6000 autopsies he has performed or supervised in his career, he could recall only three cases in which the victims presented with evidence of both manual and ligature strangulation, and the Pellegrino and Comeau murders were two of those cases. Moreover, Edward T. McDonough, the former deputy chief medical examiner and the medical examiner who performed the autopsies on both Pellegrino and Comeau, similarly testified that the Pellegrino and Comeau murders were the only cases he could recall that had involved both manual and ligature strangulation.

As the state maintains, however, numerous other commonalities bring into sharp relief the signature nature of the crimes. As we previously indicated, both women were murdered shortly after being released from prison, both women were killed in a location other than where their bodies were found, both women sustained occipital trauma, both women had ingested cocaine immediately prior to death, no clothing or jewelry was found in the vicinity of either body, there was evidence that both women frequented the home of the defendant's father, and the defendant admitted to having had a sexual encounter with each victim on the day of each murder. These additional factors, when considered together with the aforementioned factors, underscore the propriety of the trial court's decision to join the cases for trial.

Accordingly, we find no merit in the defendant's con-

tention that the trial court abused its discretion in joining the cases for trial because some of the similarities between the murders—for example, both women were prostitutes, both women used crack cocaine, and both women resided in New London County—were not sufficiently unique or distinctive as to warrant an inference that the murders were committed by the same person. Indeed, even if we agreed with the defendant's characterization of this evidence as commonplace, "[t]he fact that some of the similarities between the offenses [are] . . . relatively common occurrences when standing alone does not . . . negate the uniqueness of the offenses when viewed as a whole. It is the distinctive combination of actions [that] forms the signature or modus operandi of the crime . . . and it is this criminal logo [that] justifies the inference that the individual who committed the first offense also committed the second." (Citations omitted; internal quotation marks omitted.) *State* v. *Figueroa*, supra, 235 Conn. 164. We therefore conclude that, even though some of the shared characteristics of the murders were not especially unique when viewed in isolation, the distinctive combination of elements fully justified an inference that the same person had committed both crimes.

We also find no merit in the defendant's contention that the trial court abused its discretion in consolidating the cases because many of the alleged similarities were not proven at trial. Specifically, the defendant argues that it was never proven that Pellegrino and Comeau knew one another, that Comeau knew the defendant, that Comeau's body was posed or in the process of being posed at the time of discovery, that the murders occurred in warm weather months, that the bodies were discovered in rural areas, or that the victims both had dark hair. We do not agree with the defendant's characterization of the evidence presented at trial. As the state maintains, and as a review of the record confirms, the state adduced evidence of all but two of the alleged similarities, namely, that the victims knew one another and that they had dark hair.[5] But even if the state's evidence fell short in some respects, it would not alter our conclusion regarding the propriety of the trial court's decision to join the cases for trial because, as we recently have explained in addressing a similar claim, "it is well established that the trial court, in making the discretionary, pretrial decision to join multiple cases, rules on whether the evidence could be admissible, not whether the evidence actually is admitted. . . . Because the decision to join two cases occurs prior to the introduction of evidence, the trial court must make its decision on the basis of potential admissibility rather than what actually transpires at trial. It would not make sense for a reviewing court to overturn the trial court's discretionary, pretrial decision to consolidate solely on the ground that the parties did not ultimately introduce the evidence at trial." (Citation omitted; emphasis omit-

ted.) *State* v. *Crenshaw*, supra, 313 Conn. 89. Similarly, it would make no sense for this court to set aside a trial court's pretrial decision to consolidate solely because the state ultimately failed to prove some of the facts alleged to be cross admissible when the evidence that *was* adduced was sufficient to support the determination that the evidence was cross admissible.

We also disagree with the defendant that the trial court abused its discretion in joining the cases for trial because some of the alleged similarities were duplicative of one another. Specifically, the defendant argues that the state's separate allegations that the homicides took place approximately fifteen miles apart, that they took place in the same county, and that both victims resided in New London County, are really just another way of saying that the homicides occurred in "roughly the same geographic area." (Internal quotation marks omitted.) The defendant also argues that the allegations that both victims " 'were known to use crack cocaine' " and " 'had cocaine in their blood when their bodies were found' " are also duplicative because "the use of cocaine . . . [is] a necessary condition of . . . having cocaine in one's system . . . ." We do not agree that these allegations are duplicative. As the state maintains, it does not necessarily follow that a victim who uses crack cocaine will also have cocaine in her system at the time of her death. The fact that she does, however, is relevant not only for what it reveals about the victim's drug habits, but also for what it reveals about the modus operandi of the killer, in particular, the methods he may use to target or lure his victims. Similarly, the fact that both Pellegrino's and Comeau's bodies were found approximately fifteen miles apart and the fact that they both resided and were killed in New London County are not necessarily duplicative in the context of proving a signature crime. Although these facts may seem to support but a single proposition concerning geographic proximity, each one adds to the distinctive mosaic of common occurrences that ultimately combine to justify the inference of a signature crime. Finally, even if we were to agree that one or more of the allegations contained in the state's offer of proof were duplicative, the other nonduplicative allegations were sufficient to justify an inference of modus operandi. Accordingly, the defendant cannot prevail on his claim that the trial court abused its discretion in consolidating the Pellegrino and Comeau cases for trial on the basis of the cross admissibility of the evidence in the two cases.[6]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The defendant appealed directly to this court from the judgment of the trial court pursuant to General Statutes § 51-199 (b).

[2] In *Boscarino*, this court "identified several factors that a trial court should consider in deciding whether a severance [or denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the

crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *LaFleur*, 307 Conn. 115, 156, 51 A.3d 1048 (2012).

[3] Although our decision in *Payne* was officially released on January 24, 2012, and the defendant filed his motion, which was based on that decision, one week earlier, on January 17, 2012, a preliminary version of our decision in *Payne* had been released to the public on the Judicial Branch website on or before January 17, 2012.

[4] In *Payne*, we explained that the state must "prov[e], by a preponderance of the evidence," either that the evidence is cross admissible or that the defendant will not be unfairly prejudiced in accordance with *Boscarino*. *State* v. *Payne*, supra, 303 Conn. 550. The defendant suggests that this language supports his contention that an evidentiary hearing is required whenever the state seeks to join multiple informations for trial. The defendant misapprehends our holding in *Payne*, in which we concluded only that the state bears the burden of establishing that joinder is proper. See id.

[5] We note, however, that there was evidence that both Pellegrino and Comeau had frequented the home of the defendant's father.

[6] We note that the defendant also claims that the trial court improperly denied his motion to dismiss in the Comeau case for lack of a speedy trial. As we previously indicated, the trial court declared a mistrial in the Comeau case after the jury was unable to reach a verdict in that case. Although neither party has raised the issue of whether the trial court's denial of the defendant's motion to dismiss constitutes a final judgment for purposes of appeal, we must address the issue because it implicates this court's subject matter jurisdiction. See, e.g., *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim"). It is well established that "[t]he principal statutory prerequisite to invoking our jurisdiction is that the ruling from which an appeal is sought must constitute a final judgment. See General Statutes §§ 51-197a and 52-263. . . . We cannot hear appeals from preliminary rulings of the trial court . . . . Piecemeal appeals, particularly in criminal proceedings, are not only outside [of] our jurisdiction, but also contravene the long-standing case law of this state and the United States." (Internal quotation marks omitted.) *State* v. *Rhoads*, 122 Conn. App. 238, 243, 999 A.2d 1, cert. denied, 298 Conn. 913, 4 A.3d 836 (2010). Moreover, it is well established that, "[i]n a criminal proceeding, there is no final judgment until the imposition of a sentence." (Emphasis omitted; internal quotation marks omitted.) Id. This court previously has recognized that the denial of a motion to dismiss for lack of a speedy trial is not a final judgment for purposes of appeal. See, e.g., *State* v. *Fielding*, 296 Conn. 26, 36, 994 A.2d 96 (2010); *State* v. *Spendolini*, 189 Conn. 92, 93, 454 A.2d 720 (1983); *State* v. *Lloyd*, 185 Conn. 199, 207, 440 A.2d 867 (1981). Although some narrowly defined exceptions to the final judgment rule exist in the civil context, "[w]e have been disinclined . . . to extend the privilege of an interlocutory appeal in criminal cases beyond the double jeopardy circumstance. This reluctance stems principally from our concern that to allow such appeals would greatly delay the orderly progress of criminal prosecutions in the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Alvarez*, 257 Conn. 782, 796, 778 A.2d 938 (2001). In the present case, the defendant does not explain why he is entitled to review of his speedy trial claim in the absence of a final judgment in the Comeau case, and, accordingly, we adhere to our prior practice of declining to review such claims for want of subject matter jurisdiction.

We note, however, that the defendant also argues that the alleged speedy trial violation in the Comeau case caused him prejudice in the Pellegrino case, presumably because, if there had been no such purported speedy trial violation, the cases would have been tried separately, and, consequently, the jury in the Pellegrino case would never have learned about the Comeau murder. The defendant's argument fails to account for the fact that the cases were tried together because the evidence would have been cross admissible if they had been tried separately. Accordingly, even if there was a speedy trial violation in the Comeau case, it could not possibly have prejudiced the defendant in the Pellegrino case because the evidence relating to Comeau's murder nevertheless would have been admissible in the Pellegrino case. Cf. *State* v. *Crenshaw*, supra, 313 Conn. 89 (when evidence is cross admissible,

joinder does not prejudice defendant "as the proper remedy for improper joinder is the granting of two new, separate trials, during which the parties ostensibly would be free to introduce the contested evidence in both cases in any event").

———————————————————